# Charleston.

## WILLIAM CROW AND DAVID HOWELL *vs.* SUPERVISORS JEFFERSON COUNTY.

### January Term, 1872.

By deed, shortly after the formation of Jefferson county from the territory of Berkeley, W. conveys four lots to J. K. and sixteen others, in Charlestown, "being the same lots appropriated by Colonel Charles Washington in his lifetime for the public buildings, in case a division should take place of the aforesaid county of Berkeley, which has taken place," &c., "in trust, notwithstanding that one of the aforesaid lots came to the inhabitants of the said town of Charlestown, for the purpose of erecting a market house thereon ; the remaining three lots for the purpose of erecting the public buildings thereon." HELD :

> That by the language of the deed, one lot only is limited to the use of the town of Charlestown ; and the remaining lots were intended to be limited to the use of the county for its public buildings.

Shortly after the formation of the county of Jefferson, from the territory of Berkeley, on the 31st of August, 1801, Samuel Washington made a conveyance to John Kearsley and sixteen others, a part of which is as follows :

"That for and in consideration of the sum of one dollar current money of Virginia to the said Samuel Washington, in hand paid by the said John Kearsley, &c., &c., before the sealing and delivery of these presents, the receipt whereof he doth hereby acknowledge, and thereof doth release, acquit and discharge the said John Kearsley, &c., &c., and their executors and administrators, by these presents, they, the said Samuel Washington and Dorothea, his wife, have granted, bargained, and sold, and by these presents do grant, bargain, and sell unto the said John Kearsley, &c., &c., and their heirs, four half lots of ground situate in Charlestown and county — Berkeley aforesaid, lying on the corner of Washington and —— street, running the length of half a lot on Washington street and the full depth of a lot on —— street, being

the same lots appropriated by Colonel Charles Washington in his life-time for the public buildings in case a division should take place of the aforesaid county of Berkeley, which has taken place, and all houses, buildings, orchards, ways, water courses, profits, commodities, hereditaments, and appurtenances whatsoever, to the said premises, hereby granted or any part thereof belonging, ordinarywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, use, trust, property, claim and demand, whatsoever of them, the said Samuel Washington and Dorothea, his wife, of, in, and to the said premises, and all the deeds, evidences, and writings touching or in anywise concerning the same : To have and to hold the lands hereby conveyed, and all and singular other the premises hereby granted, and every part and parcel thereof, with their and every of their appurtenances, unto the said John Kearsley, &c., and their heirs and assigns forever, to the only proper use and behoof of them. the said John Kearsley, &c., and their heirs and assigns forever, in trust notwithstanding that one of the aforesaid lots is to enure to the inhabitants of the said town of Charlestown for the purpose of erecting a market house thereon; the remaining three lots for the purpose of erecting the public buildings thereon."

On the 19th of April, 1869, the board of supervisors of Jefferson county passed an order appointing a commissioner to advertise and sell one of the lots, being the one on which the jail of the county had been erected, which building had been torn down or rendered useless during the war. The commissioner advertised the lot, when the appellants, Crow and Howell, filed a bill of injunction to restrain the sale. The bill alleged the foregoing facts, and claimed that no power existed in the board to sell the lot, as by the terms of the deed from Washington the property was not vested in the county, but secured to the citizens of Charlestown. The board answered and denied the construction sought to be placed upon the deed by the appellants, and claimed that they had complete control of the lot; that they had not advertised the market house lot, but the jail lot, over which the inhabitants of the town, as such, had no authority or control.

At the December term, 1869, the injunction was dissolved by the circuit court.

The plaintiff in the injunction appealed.

*J. W. Kennedy* for the appellants.

This is an appeal from a decree of the circuit court of Jefferson county dissolving an injunction which had been awarded at the suit of Crow and Howell, citizens of Jefferson county and inhabitants of Charlestown, to restrain the board of supervisors from selling certain real estate, lots in Charlestown, donated by Samuel Washington and wife to John Kearsley and others, trustees, as we contend, and in the exact language of the deed, "that one of the said lots is to enure to the *inhabitants of the said town of Charlestown* for the purpose of erecting a market house thereon, the remaining three lots for the purpose of erecting the public buildings thereon."

This deed was executed in August, 1801, by Samuel Washington alone, his wife not joining in the conveyance.

The grantor and his wife, as the deed shows, were citizens of Spottsylvania county, Virginia, and the trustees were citizens of *Berkeley* county, in this State.

This deed conveyed these lots to the said "trustees, their heirs and assigns *forever*, the only proper use and behoof of them," in trust as before stated.

The bill alleges that this was a conveyance of the *legal title* in these lots to the trustees for the use and benefit of the *inhabitants of Charlestown*.

*The answer* takes another view.

It admits that the complainants are citizens of Jefferson county and inhabitants of Charlestown; that the deed from Washington is a correct copy thereof; and the correctness of the order made by the board for the sale of these lots, and the advertisement of Samuel Ridenour to sell the same, but alleges that these lots by this deed were conveyed to the *county* of Jefferson, and, that being so conveyed, were by the act of 1863, sections 2, 3 and 8, the *property of said county*, and by that act the board of supervisors had the power to sell them.

These are the questions, therefore, which the court must now be called upon to pass.

1. Was this a conveyance to the county of Jefferson of the *legal title* to these lots?

2. If so, had the board of supervisors under the act of 1863, or any other act, the power to sell these lots?

Did the deed convey the legal title to these lots in Charlestown to the county of Jefferson?

If it did not, the board of supervisors, under the act of 1863 had no power to sell them.

Agreements are *always* to be construed according to the *evident intent* of the *parties, appearing from the deed itself,* without a rigid adherence to the letter. *Hawkins, executor,* vs. *Berkeley,* 1 Was., 204. By that test let us try this deed.

I submit that, upon a rigid adherence even to the letter, it was the evident intention of Samuel Washington to convey the *fee simple* in these lots to John Kearsley and the nineteen other gentlemen of Berkeley county, Virginia, and the *use* only of said lots to the inhabitants of *Charlestown.*

The very language of the deed is enough, it seems to me, to put this question at rest forever. He conveys these lots to the trustees (mentioned in the deed) "and *their heirs* and *assignees forever*" in *trust,* notwithstanding that *one* of the aforesaid lots is to enure to the *inhabitants* of *Charlestown* for the purpose of erecting a market house thereon, the *remaining three* for the purpose of erecting the public buildings thereon."

It is admitted in the answer that the market house lot is conveyed to the *inhabitants* of *Charlestown.*

Is there anything in the language of this deed to show that it was the *evident intention* of the grantor to convey the other three lots to the *county of Jefferson?*

The same sentence which passes the market house lot passes also the other three.

He does not say that these three shall *enure to the people of the county.*

Such intention is not evident from the language there used. On the contrary, he has expressly declined to use any expression looking to any intention on his part to make such distinction. Had he so intended, he would certainly have used some language which would have embodied that intention and left no doubt as to what he did mean.

If any such idea can be tortured from the language he uses it can come only from the use of the words, "The remaining three lots for the purpose of erecting the public buildings thereon."

Conceding this to mean the court house and jail, which were subsequently erected thereon, does that fact pass the *legal title* to the county? It may give it the *use* of those lots, but surely *not* the *fee*.

I hold that the grantor intended by the deed to put the fee simple beyond any possible future contingency. He *evidently intended* that if Charlestown should not be chosen as the county seat, or, being so chosen, should not remain, then these lots should not be sold for county purposes, but reside *forever* in the people of the town which had been called after his brother Charles.

Does the conveyance of the use to the county give it the power to sell the fee?

Such a proposition I hardly suppose this court will refuse to negative.

2. Had the board of supervisors the power under the act of 1863 to sell these lots.

I hold that these clauses of the act of 1863 were repealed by the Code of 1868. See page 236, ch. 39, sections 30 and 31.

Of these acts this court must take judicial notice.

If I am wrong in all these positions, I submit that it is alleged in the answer, that these buildings were destroyed during the war, and the county seat removed to Shepherdstown, before and during the pendency of this suit in the court below.

This was a Virginia contract. It must stand or fall by Virginia law. No act of this State can govern its fate. *Warden* vs. *Ardell*, 2 Was., 282.

The law of Virginia in 1801, when this contract was executed, was, I believe, the same as it was at common law.

The doctrine of the common law with regard to trust was that where the trust has been executed, exhausted, or never takes effect, the estate reverts to the grantor. Cruise's Digest, vols. 1 and 2, p. 314, § 56, and notes; Kent, vol. 4, 299; Co., Litt., 23 *a*, 271 *b*; *Sir E. Clair's case*, 6 Co., 17 *b*; *Armstrong* vs. *Wolsey*, 2 Wil. Rep., 19.

32

Neither the legislature of 1863, or that of 1871, had any *constitutional* power to pass these acts. They could not divest the trustees of the legal title to real estate and vest that title in anybody else.

It was in violation of that clause of the Constitution of the United States which declares that "no State shall pass any law impairing the obligation of contracts." 1 Kent, pp. 413, 414 and 415; *Fletcher* vs. *Peck*, 6 Cranch, 87; *State of New Jersey* vs. *Wilson*, 7 Cranch, 164; *Terrett* vs. *Taylor*, 9 Cranch, 43; *Dartmouth College* vs. *Woodward*, 4 Wheat., 518; Sedgwick's Con. and Stat. Law, 169, 177, 539, 671.

*C. J. Faulkner* for appellee.

It is argued in this case that according to the fair construction of that deed, a trust was created in the four half lots for the benefit of the inhabitants of Charlestown. A simple inspection of the deed is sufficient to show that there is not the slightest foundation for this pretension. One of the four half lots was conveyed for the benefit of the inhabitants of that town, the remaining three for the use of the county.

But it is further argued by the appellants that if their construction of the deed is not the true one, still, that the property having now ceased to be used for the purpose for which it was originally conveyed, the title reverts to the heirs of Samuel Washington and the board of supervisors have no control over it.

It might be time enough to discuss this aspect of the case when the heirs of Samuel Washington shall assert some claim or pretension to the property; but so far they have done nothing of the kind.

There is no pretense upon which any such claim could be asserted by them. This was no donation of that property, but a regular purchase by deed of bargain and sale. No rights of any kind, or under any condition or contingency, are reserved in that deed to the heirs of the grantor. *Stanley* vs. *Colt*, 5 Wallace U. S. Sup. Court, 165. See Justice Nelson's opinion in this case.

The board of supervisors had full authority to make sale of said jail lot. Sec. 2, chap. 78, of the acts of 1863 of the State of West Virginia; secs. 3 and 8, referred to in the

answer, pages 14 and 15. See also Code of 1869, chap. 39, sec. 30. The act of 1863 vested this property absolutely in the county. The Code of 1869 continues the full authority to sell.

It is difficult to see what object there can be in making any further question as to the rightful authority of the board of supervisors to make sale of this jail lot. The sale is universally desired in the county, and men of all parties, and of all shades of opinion, concur in its propriety. To accomplish the very purpose which the republican board of 1869 sought, the opposite party obtained a special act of the democratic legislature authorizing commissioners named in said act to do. See acts of West Virginia of 1871, chap. 131, page 175. Whether this act of the legislature, taking from the board of supervisors their just authority over this property, and vesting the same in commissioners appointed in that act, is in accordance with the constitution of our State, it is not necessary to inquire in this case. It is not here in issue, and I only refer to it to show the wish of all parties that the injunction heretofore awarded in this case be dissolved, and the present democratic board of supervisors be allowed to complete what their republican predecessors so wisely begun.

BERKSHIRE, P. The only question that need be considered in this case, is the construction of the deed from Samuel Washington and wife to John Kearsley and others, dated the 31st of August, 1801. This deed was made soon after the creation of the county of Jefferson out of a portion of Berkeley county. This deed is founded on a valuable consideration, and must stand on the footing of a regular conveyance of bargain and sale. It conveys to said Kearsley and eighteen others, and to their heirs and assigns forever, four half lots described therein, in the town of Charlestown, to be held by them and their heirs forever, "in trust, notwithstanding that *one* of the aforesaid lots is to enure to the inhabitants of said town of Charlestown, for the purpose of erecting a market house thereon; the remaining three lots for the purpose of erecting the public buildings thereon."

The deed is formally and technically drawn, and contains the usual covenants (found in deeds of that day) of title,

seizen, general warranty, &c.   It appears that the authorities of Jefferson county proceeded, soon after its formation, and the execution of the deed, to erect the public buildings of the county on the lots so conveyed for the purpose of erecting thereon the public buildings, and that the jail for the county was erected on the lot now in controversy.   The appellants filed their bill to enjoin the supervisors of Jefferson county from selling the "jail lot" (during the late rebellion the jail having been burned), which they were proceeding to do under the provisions of the laws of the State.   They found their right to enjoin said sale, on the fact of their being inhabitants of Charlestown, and upon the additional fact (as they claim) that upon a proper construction of the deed aforesaid, *all* of said lots were conveyed to the trustees, named therein, for the use and benefit of the inhabitants of said town, and that, consequently, the authorities of the county had no title to, nor right to sell, the lot in dispute, to the prejudice of the inhabitants of said town.

The question now recurs : What is the proper construction of the deed, with reference to the use and enjoyment of the property thereby conveyed?   A critical examination of the whole deed, it seems to me, can leave no reasonable doubt as to the *intention* of the grantors in making such conveyance; namely, to limit one *only* of the lots so conveyed, to the use of the inhabitants of Charlestown, for the purpose named, and the *others* to the use of the county, whereon to erect its public buildings.   This would appear to be clear from the language used, in the part of the deed creating or describing the trust; *one* of the lots being *expressly* limited to use of the "inhabitants of Charlestown," the fair *implication* is, that the *others* were *not* limited to the use of the identical same persons.   And, moreover, when it is remembered that the county of Jefferson had just been created and Charlestown designated as the county seat, and that the county must necessarily have public buildings in said town, while the *latter* need not, it seems to me there can be no reasonable doubt, from the terms used in this clause of the deed, that they refer to the public buildings of the *county* and not of the town.   But if, upon the language here used there could be any rational doubts as to the object or purpose of the

grantors, such doubts must be solved, and their intention appear manifest by a reference to the previous part of the deed, describing the lots therein conveyed. For they are described as "being the same lots appropriated by Colonel Charles Washington in his lifetime, for the public buildings, *in case a division should take place* of the aforesaid county of Berkeley, which *has* taken place, &c." It is perfectly evident, therefore, that the grantors were carrying out the wishes of Colonel Washington in providing grounds on which to erect the public buildings for the new county, and referred to the same public buildings contemplated by the former; the only modification being the conveyance of the one of said lots to the use of the inhabitants of Charlestown for the use and purpose indicated. The appellants, therefore, having, as inhabitants of said town. merely, no special interest in the lot in controversy, and consequently could have no right to enjoin the contemplated sale of it by the supervisors of the county, it is unnecessary to consider the other questions discussed by counsel, as they do not properly arise on the record.

The decree must be affirmed with costs and damages.

The other judges concurred.

DECREE AFFIRMED.